Josh A. Cohen (SBN 217853)
Jonathan Baum (SBN 303469)
CLARENCE DYER & COHEN LLP
899 Ellis Street
San Francisco, CA 94109
Tel: (415) 749-1800
Fax: (415) 749-1694
jcohen@clarencedyer.com
jbaum@clarencedyer.com

Attorneys for Defendant
JING QI "GEE" WEIDEN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 18-cr-00259 BLF |
| Plaintiff, | |
| v. | **DEFENDANT JING QI "GEE" WEIDEN'S MOTION TO DISMISS** |
| KATHERINE MOGAL, ANA ROSARIO, PATRICK NARRON, PATRICIO ROMANO, RONG "AUDREY" ZHANG, JING QI "GEE" WEIDEN, | Date: December 11, 2018 Time: 10:00 a.m. |
| Defendants. | |

TO THIS HONORABLE COURT, AND GOVERNMENT COUNSEL, AND DEFENSE COUNSEL:

PLEASE TAKE NOTICE that on December 11, 2018 at 10:00 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Beth L. Freeman, United States District Judge, defendant Jing Qi "Gee" Weiden will, and hereby does, move this Court to dismiss the indictment against her because the government is precluded by collateral

1   estoppel from proving an element of the offense.  This motion is based on the United States

2   Constitution, the Federal Rules of Criminal Procedure, the accompanying memorandum of

3   points and authorities, the pleadings that have been filed in this matter, and such further

4   argument and evidence as may be presented prior to and during the hearing on this motion.

5     FURTHER, counsel for Ms. Weiden has conferred with the government, and the parties

6   have agreed to a briefing schedule that complies with Crim. L.R. 47-2, providing 14 days for the

7   Court to review the fully briefed motion. Pursuant to this agreement, counsel for Ms. Weiden

8   will file this motion by Nov. 2, 2018, the government will respond by Nov. 16, 2018, and Ms.

9   Weiden will reply by Nov. 27, 2018.

10

11   DATED:  November 2, 2018       Respectfully submitted,

12                        */s/*

13                     _____

13                     Josh A. Cohen

14                     Jonathan M. Baum

14                     **Attorneys for JING QI "GEE" WEIDEN**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**FACTUAL BACKGROUND** ........................................................................................... 1

   A.   The Indictment ............................................................................................ 2

   B.   The International Trade Commission Action ............................................... 3

**ARGUMENT** .............................................................................................................. 7

  **I.**   **Collateral Estoppel Bars the Government From Relitigating Issues Previously Determined by the ITC** ......................................................................... 7

  **II.**   **The ITC's Ruling that the "Vendor Information" Is Not a Trade Secret Precludes the Government From Proving the Offense Charged Against Ms. Weiden** ................................................................................................ 9

     1.   The Trade Secret Issue Was Fully and Fairly Litigated Before the ITC ................. 9

     2.   The Issue of Whether the "Vendor Information" Constitutes a Trade Secret Was Actually Litigated in the ITC Case ..................................................... 10

     3.   The Trade Secret Issue Was Resolved by Way of a Final ITC Judgment .............. 11

     4.   The Government Was a Party, Or In Privity with a Party, to the ITC Case ........... 11

**CONCLUSION** ............................................................................................................ 14

1

**TABLE OF AUTHORITIES**

2

**Cases**

3
*Adams v. Morton*, 581 F.2d 1314, 1318 (9th Cir. 1978)...................................................... 13

4
*Aunyx Corp v. Canon U.S.A., Inc.*, 978 F.2d 3, 7-8 (1st Cir. 1992) ........................................ 8, 11

5
*B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1309 (2015) ................................. 9

6
*Baltimore Luggage Co. v. Samsonite Corp.*, 727 F. Supp. 202, (D. Md. 1989)........................... 8

7
*Baltimore Luggage Co. v. Samsonite Corp.*, 977 F.2d 571 (4th Cir. 1992) ................................. 8

8
*Block v. U.S. Int'l Trade Comm'n*, 777 F.2d 1568, 1571 (Fed. Cir. 1985)................................... 8

9
*EEOC v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1287-88 (11th Cir. 2004) ............................... 13

10
*In re Huang*, 275 F.3d 1173, PIN (9th Cir. 2002) ...................................................................... 10

11
*International Brotherhood of Elec. Workers v. Brink Constr. Co.*, 825 F.2d 207, 213 (9th Cir. 1987).................................................................................................................................... 11

12
*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050 (9th Cir. 2008) ..................................... 7, 9, 11

13
*Montana v. United States*, 440 U.S. 147, 153 (1979) ................................................................ 13

14
*Ornellas v. Oakley*, 618 F.2d 1351, 1356 (9th Cir. 1980) ......................................................... 11

15
*U.S. Int'l Trade Comm'n v. Jaffe*, 433 B.R. 538, 544 (E.D. Va. 2010).................................. 8, 12

16
*Union Mfg. Co., Inc. v. Han Baek Trading Co., Ltd.*, 763 F.2d 42, 45 (2d Cir. 1985)................. 8

17
*United States v. Abatti*, 463 F. Supp. 596, 601 (S.D. Cal. 1978)..................................... 7, 11, 14

18
*United States v. Cejas*, 817 F.2d 595, 598 (9th Cir. 1987) .......................................................... 7

19
*United States v. Chen*, 659 F.3d 815, 826-27 (9th Cir. 2011) ...................................................... 2

20
*United States v. Egan Marine Corp.*, 843 F.3d 674, 678 (7th Cir. 2016)..................................... 7

21
*United States v. Utah Constr. Co.*, 384 U.S. 394, 421-22 (1966)................................................. 8

22
*United States v. Zhang*, No. CR-05-00812 RMW, 2012 WL 1932843 (N.D. Cal. May 29, 2012) .............................................................................................................................................. 2

23

**Statutes**

24
18 U.S.C. § 1839............................................................................................................................ 2

25
18 U.S.C. §§ 1832, 1839(3) ......................................................................................................... 10

26
19 C.F.R. § 210.10 ......................................................................................................................... 3

27
19 C.F.R. § 210.15 ......................................................................................................................... 3

28

DEFENDANT WEIDEN'S MOTION TO DISMISS

19 C.F.R. § 210.28 ............................................................................................... 3

19 C.F.R. § 210.3 ............................................................................................ 3, 11

19 C.F.R. § 210.49 ............................................................................................... 3

19 C.F.R. §§ 210.8(c)(1), 210.50(a)(2) ............................................................... 3

19 U.S.C. § 1337 .................................................................................................. 3

19 U.S.C. § 1337(b)(2) ......................................................................................... 4

**Other Authorities**

Ninth Cir. Model Crim. Jury Instr. 8.141B ......................................................... 2

Ninth Cir. Model Crim. Jury Instr. 8.141C ......................................................... 2

**Treatises**

Aimee N. Soucie, Unfair Competition and the ITC: A Treatise on

     Section 337 Actions (2017-2018 ed.) .................................................... 3, 8, 12

## MEMORANDUM OF POINTS & AUTHORITIES

A conviction for possessing a purportedly stolen trade secret requires that a trade secret have been possessed.  Accordingly, the government cannot prevail in its case against Jing Qi "Gee" Weiden unless it proves beyond a reasonable doubt that the information alleged to have been in her possession qualifies as a trade secret as a matter of law.

This is an impossible burden.  The United States has already litigated the question whether the supposed trade secret Ms. Weiden allegedly possessed was, in fact, a trade secret. After more than a year of litigation and a six-day trial before the International Trade Commission, the Commission answered that question with a resounding "no."  In an 87-page opinion, an administrative law judge found that Ms. Weiden did nothing wrong, and that the supposed trade secret she possessed – information about vendors who supplied circuit boards to a wide array of electronics manufacturers – was not a trade secret at all, but merely "the kind of knowledge that is generally acquired by experienced employees in an industry."

Now, despite that finding – and despite the integral role the United States played as a full party in the ITC proceeding that produced it – the government has filed a criminal case against Ms. Weiden based on the very same facts. The problem for the government is that it is bound by the ITC's ruling.  It follows that the government cannot prove the central element of the offense charged against Ms. Weiden, and that the indictment against her must therefore be dismissed.

## FACTUAL BACKGROUND

Gee Weiden has worked for the past 15 years as a program manager in the consumer electronics industry.  From 2011 to 2014, Ms. Weiden worked at the consumer device company AliphCom, Inc., d/b/a Jawbone ("Jawbone"), which produced portable audio devices and personal activity trackers. *See* Exhibit 1, International Trade Commission, ALJ Decision ("ITC Decision") (Aug. 23, 2016), at 26.  Ms. Weiden left Jawbone in March 2014.  *Id.*  After working at two other technology companies—Microsoft, Inc. and Monster, Inc.— she landed at Fitbit, Inc. ("Fitbit") in November 2014.  *Id.*

## A.  The Indictment

The indictment alleges that Ms. Weiden possessed a stolen trade secret in violation of 18 U.S.C. § 1832(a)(3).  This purported trade secret consisted of "Vendor And Pricing Information for International Suppliers."  Dkt. 1, p. 7, Count Three.  The indictment describes this "Information" as "[l]ists and schedules of Jawbone's vendors who have been determined to be, through trial and error, capable of providing reliable services and products, including but not limited to printed circuit board fabrication, labor, materials, components, and other services involving specialized skills or equipment, and corresponding pricing information."  *Id.* at ¶ 10(c).

The government's theory at trial will be that Ms. Weiden received this "Information" via email while she was employed at Jawbone.  The government will seek to prove that Ms. Weiden later forwarded the "Information" to herself at her Fitbit email address, and that she subsequently cut and pasted certain vendors' names and contact information (but nothing else) into emails she sent to Fitbit colleagues.

To prove Ms. Weiden guilty of the charged offense, the government would have to prove beyond a reasonable doubt that, *inter alia*, the information she allegedly possessed was, in fact, a trade secret.  *See United States v. Zhang*, Case No. CR-05-00812 RMW, 2012 WL 1932843 (N.D. Cal. May 29, 2012) (noting that one element of a violation of 18 U.S.C. § 1832 is "that the information constituted a trade secret"); Ninth Cir. Model Crim. Jury Instr. 8.141B (government must prove that the defendant knowingly possessed a trade secret).  In turn, this would require proof that the information "derive[d] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by the public," and that "the owner thereof ha[d] taken reasonable measures to keep such information secret."  18 U.S.C. § 1839(3)(A); *United States v. Chen*, 659 F.3d 815, 826-27 (9th Cir. 2011); Ninth Cir. Model Crim. Jury Instr. 8.141C.  If the government cannot establish this element of the offense, Ms. Weiden cannot be convicted of the only crime charged against her in the indictment.

DEFENDANT WEIDEN'S MOTION TO DISMISS

1

### B.  The International Trade Commission Action

2    The question whether the "Vendor and Pricing Information for International Suppliers"

3   charged in the indictment constituted a trade secret was adjudicated by the International Trade

4   Commission ("ITC") in 2016.

5    The ITC is a quasi-judicial federal agency authorized by statute to investigate and

6   adjudicate, among other things, allegations of unfair competition through the importation of

7   products alleged to incorporate trade secrets.  *See* 19 U.S.C. § 1337.  When a private party

8   brings a complaint to the attention of the ITC, the Commission conducts a "preinstitution

9   proceeding."  19 C.F.R. § 210.8.  The Commission's members then vote on whether to initiate

10   an investigation.  19 C.F.R. § 210.10.  Among the factors the ITC considers in deciding whether

11   to institute an investigation is the effect a final determination will have "upon the public health

12   and welfare, competitive conditions in the U.S. economy, the production of like or directly

13   competitive articles in the United States, and U.S. consumers."  19 C.F.R. §§ 210.8(c)(1),

14   210.50(a)(2).

15    When the ITC elects to pursue an investigation, the Commission assigns an investigative

16   attorney from the Commission's Office of Unfair Import Investigations ("OUII"), who functions

17   as an independent litigant representing the public interest.  19 C.F.R. § 210.3.  The

18   responsibilities of the OUII investigative attorney "are to (1) act as a proxy for the Commission

19   in executing its responsibility to investigate violations of Section 337 and (2) represent the

20   public interest." Aimee N. Soucie, *Unfair Competition and the ITC: A Treatise on Section 337*

21   *Actions* § 4:33 (2017-2018 ed.).  Through the investigative attorney, the OUII is a full party to

22   the investigation.  *See* U.S. International Trade Commission, Section 337 Investigation FAQs,

23   Official Publication No. 4105 (Mar. 2009), *available at* https://www.usitc.gov/ intellectual_

24   property/documents/337_faqs.pdf.  As a party, the OUII is entitled to participate fully in the

25   litigation by, *inter alia*, propounding discovery, taking depositions, filing and opposing pre-trial

26   motions, making arguments and examining witnesses at trial, and filing pre- and post-hearing

27   briefs.  19 C.F.R. §§ 210.49; 210.28; 210.15.  In discharging its role, the OUII is required by

28

1    law to "consult with" and "seek advice and information from" other federal agencies, including

2    the Department of Justice.  19 U.S.C. § 1337(b)(2).  Additionally, after the ALJ reaches an

3    initial decision, the ITC is required to provide notice of the decision to several federal agencies,

4    including the Department of Justice, so that they may comment on the decision before it

5    becomes final.  19 C.F.R. § 210.66(d).

6        In July 2015, Jawbone lodged a complaint with the ITC alleging that several Jawbone

7    trade secrets were misappropriated by Fitbit and Fitbit employees, including Ms. Weiden.  For

8    her part, Ms. Weiden was alleged to have misappropriated Trade Secret No. 128,[1] consisting of

9    "[l]ists, schedules and charts identifying Jawbone's suppliers and vendors who provide labor,

10   pack-out services, materials and components for Jawbone products, shipping services,

11   distribution services, drafting services, and design services."  Jawbone's Third Amended

12   Designations of Trade Secrets, at 110.  This information was alleged to have

13   assisted Jawbone "to obtain favorable pricing and terms with its vendors, and to maintain

14   favorable prices and terms in the future."  *Id.* at 111.[2]

15       The ITC elected to institute an investigation into Jawbone's claims and assigned an

16   administrative law judge to the case.  During the ensuing litigation, Fitbit produced

17   approximately 779,000 pages of documents; Jawbone's expert spent approximately 538 hours

18   inspecting Fitbit's source code; and 17 Fitbit employees, including Ms. Weiden, were deposed.

19

20   [1] The "vendor information" trade secret was listed as "Trade Secret No. 125" in Jawbone's
     designation of trade secrets. However, Jawbone later characterized the same "vendor
21   information" as Trade Secret No. 128, and that was how it was litigated before the ITC. *See*
     Witness Statement of Jawbone Expert Cheryl Tulkoff, at 39, describing Trade Secret No. 128 as
22   "information on Jawbone's vendor relationships," including "any manufacturer, supplier, or
     vendor who provided labor, pack-out services, materials and components for Jawbone products,
23   shipping services, distribution services, drafting services, and design services."

24

25   [2] Ms. Weiden was also alleged to have misappropriated information relating to a wireless "slot
     antenna."  That information is not at issue in this case.  Notably, however, the ALJ held that the
26   complainants were "unable to specify with any clarity a trade secret [relating to a slot antenna]
     that was misappropriated, or to demonstrate that Ms. Weiden was the conduit for such
27   misappropriation."  ITC Decision, at 27.  The ALJ further held that the "slot antenna" had not
     been taken from Jawbone at all, but was actually "conceived and developed . . . by a third party,
28   Shanghai Amphenol Airwave ('Amphenol'), in conjunction with Fitbit engineers."  *Id.*

1   *See Aliphcom, Inc. v. Fitbit, Inc.*, No. CGC-15-546004, Statement of Undisputed Facts (San

2   Francisco Superior Ct. Nov. 30, 2016).  In May 2016, the ALJ presided over a six-day trial.  Ms.

3   Weiden submitted written testimony and sat for live examination for more than two hours

4   during the trial.  *Id.*

5          An investigative attorney from the OUII represented the United States throughout the

6   litigation.  Staff from the OUII attended numerous depositions.  They submitted briefs in

7   connection with significant discovery and pretrial issues.  The investigative attorney made an

8   opening statement at trial, cross-examined trial witnesses, and submitted opening and rebuttal

9   post-trial briefs.

10         On August 23, 2016, the presiding administrative law judge issued an 87-page decision

11  rejecting all of Jawbone's trade-secret misappropriation claims.[3]  With regard to alleged Trade

12  Secret No. 128 – the same supposed trade secret Ms. Weiden is alleged to have possessed in this

13  criminal case – the ALJ concluded that "Complainants have not proven the existence or the use

14  or disclosure of vendor trade secrets by Ms. Weiden."  *Id.* at 27.

15         The ALJ provided more than seven pages of analysis underpinning her conclusion that

16  Trade Secret No. 128 was not actually a trade secret.  Specifically, the ALJ identified two

17  reasons why the "Vendor Information" Ms. Weiden possessed did not meet the legal definition

18  of a trade secret.  First, the ALJ held that complainants failed to prove that Jawbone's "vendor

19  information" was not "publicly available" or "readily available in the industry."  ITC Decision,

20  at 39.  The ALJ explained that the "vendor information" was merely "the recorded results of an

21  employee's acquisition of general knowledge and skill in the field."  *Id.* at 40 (internal citations

22  omitted).

23         Second, the ALJ held that this type of vendor information does not constitute a trade

24  secret even if it is *not* publicly available.  The ALJ explained:

25

26  ─────────────────

27  [3] The scope of the trade secret allegations narrowed dramatically over the course of the ITC
    litigation. Jawbone initially identified 154 alleged trade secrets that had allegedly been
    misappropriated. However, by the time the ALJ reached her decision, Jawbone narrowed the

28  scope of the case to just five of the original 154 trade secrets. (ITC Decision, at 28.)

DEFENDANT WEIDEN'S MOTION TO DISMISS

> That a particular vendor does good work is the kind of knowledge that is generally acquired by experienced employees in an industry. To preclude employees in high-tech industries from using such knowledge because it was obtained in the employ of a particular company would prevent them from taking advantage of their skills in the job market. The law does not permit this result. . . . In forwarding the vendor contact information and making a general recommendation of a vendor, Ms. Weiden did not reveal trade secret information.

*Id.* at 43.

In addition, the ALJ held that there was no evidence that Fitbit actually used any of the alleged trade secrets.  The ALJ made clear that each of these findings constituted a separate and independent basis for dismissing the trade secret allegations involving Ms. Weiden.  *Id.* at 40 ("Jawbone has not satisfied any of these requirements.").

The ITC was required to provide notice of the ALJ's initial decision to the Department of Justice and other federal agencies so they could comment before the decision became final. *See* 19 C.F.R. § 210.66(d).  To the best of Ms. Weiden's knowledge, the Department of Justice did not comment.

Jawbone appealed the ALJ's decision to the full International Trade Commission.  On October 20, 2016, the full Commission issued an order confirming that the trade secret misappropriation claims were meritless. The Commission adopted the ALJ's conclusion that "Jawbone failed to show that the alleged trade secrets constitute actual trade secrets, and that Respondents did not misappropriate any of Jawbone's alleged trade secrets."  Exhibit 2, ITC Commission Order (Oct. 20, 2016), at 3.[4]

---

[4] In addition to its complaint before the ITC, Jawbone filed a civil complaint alleging trade secret misappropriation and breach of contract against Fitbit, Ms. Weiden, and five other Fitbit employees in San Francisco Superior Court.  After the ITC proceeding resolved, Fitbit sought dismissal of the civil complaint on grounds of *res judicata*.  The Superior Court denied the motion on the grounds that the five alleged trade secrets that the ITC adjudicated presented a far narrower range of issues than the dozens of trade secret claims pending in Superior Court.  *See Aliphcom, Inc. v. Fitbit, Inc.*, No. CGC-15-546004, Order Denying Defendants' Motion for Summary Adjudication/Judgment (San Francisco Superior Ct. Mar. 24, 2017), at 1 (finding that "not all of the issues raised in our case were adjudicated" in the ITC, and "the elements necessary to prove a trade secret appropriation under California law are different than in the ITC").  By contrast, as set forth herein, the lone issue of relevance in *this* criminal proceeding –

1

**ARGUMENT**

2

**I.  Collateral Estoppel Bars the Government From Relitigating Issues Previously**
   **Determined by the ITC**

3

4

The doctrine of "collateral estoppel," or "issue preclusion," prevents a party from

5

relitigating an issue decided in a previous action if four requirements are met: "(1) there was a

6

full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually

7

litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4)

8

the person against whom collateral estoppel is asserted in the present action was a party or in

9

privity with a party in the previous action."  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050

10

(9th Cir. 2008).

11

Collateral estoppel applies with full force in criminal proceedings.  *See United States v.*

12

*Cejas*, 817 F.2d 595, 598 (9th Cir. 1987) ("The doctrines of *res judicata* and collateral estoppel

13

apply to criminal, as well as civil, proceedings."); *see also United States v. Egan Marine Corp.*,

14

843 F.3d 674, 678 (7th Cir. 2016) (dismissing criminal charges against tugboat captain where

15

captain prevailed in prior civil action filed by DOJ); *United States v. Abatti*, 463 F. Supp. 596,

16

601 (S.D. Cal. 1978) (holding that collateral estoppel barred federal criminal tax prosecution of

17

taxpayer who prevailed on petition for redetermination in tax court).  Courts recognize that "[i]f

18

the United States cannot prove a factual claim on the preponderance standard, it cannot logically

19

show the same thing beyond a reasonable doubt."  *Egan Marine*, 843 F.3d at 676.  Moreover,

20

the government is not entitled to "the benefit of civil discovery, which is more extensive than

21

that allowed in criminal prosecutions . . . without the detriment of being bound by the civil

22

judgment if it loses."  *Id.* at 678.

23

A consistent line of cases holds that federal administrative agency decisions give rise to

24

collateral estoppel.  The general rule is that collateral estoppel applies when an administrative

25

agency acts in a judicial capacity and "resolves disputed issues of fact properly before it which

26

27

28

---

to wit, whether the "Vendor Information" that Ms. Weiden allegedly possessed was a trade
secret – was indeed litigated and ruled upon before the ITC.

1   the parties have had an adequate opportunity to litigate." *United States v. Utah Constr. Co.*, 384

2   U.S. 394, 421-22 (1966).

3   Under this standard, non-patent rulings by the International Trade Commission are

4   regularly accorded preclusive effect.  *See*, *e.g.*, *Union Mfg. Co., Inc. v. Han Baek Trading Co.,*

5   *Ltd.*, 763 F.2d 42, 45 (2d Cir. 1985) (ITC's determination of trademark issues precluded

6   subsequent litigation of the same issues in federal court); *Baltimore Luggage Co. v. Samsonite*

7   *Corp.*, 727 F. Supp. 202, 207 (D. Md. 1989) (issues fully and fairly litigated before ITC could

8   not be relitigated in any subsequent proceeding), *aff'd*, 977 F.2d 571 (4th Cir. 1992); *Aunyx*

9   *Corp. v. Canon U.S.A., Inc.*, 978 F.2d 3, 7-8 (1st Cir. 1992) (giving res judicata effect to ITC

10  decision in later civil antitrust case); *Manitowoc Cranes, LLC v. Sany America, Inc.*, Case No.

11  13-C-677, 2017 WL 6327551 (E.D. Wis. Dec. 11, 2017) (holding that ITC determinations of

12  trade secret misappropriation issues should be given preclusive effect); *U.S. Int'l Trade Comm'n*

13  *v. Jaffe*, 433 B.R. 538, 544 (E.D. Va. 2010) (applying collateral estoppel based on ITC

14  determination because "to hold otherwise would undermine the legitimacy of the ITC

15  proceeding"); *Block v. U.S. Int'l Trade Comm'n*, 777 F.2d 1568, 1571 (Fed. Cir. 1985) (noting

16  that an ITC determination is conclusive in subsequent action involving same parties when an

17  "issue of fact or law is actually litigated and determined by a valid and final judgment").  As the

18  Second Circuit has explained, "[l]itigants should not be able to circumvent the decisional

19  authority of the ITC and the reviewing authority of the Federal Circuit by filing in a district

20  court what amounts to a collateral attack on the ITC determination."  *Union Mfg. Co.*, 763 F.2d

21  at 45; *see generally* Soucie, *supra*, § 9:10 ("To date, the editors are not aware of any courts

22  having found differently from the Second Circuit in *Union Manufacturing* and denying

23  preclusive effect to non-patent-based ITC decisions.").  Accordingly, with the narrow exception

24  of patent claims (over which Congress has granted exclusive jurisdiction to the district courts),

25  collateral estoppel applies to final rulings by the ITC.

26  ///

27  ///

28

## II.   The ITC's Ruling that the "Vendor Information" Is Not a Trade Secret Precludes the Government From Proving the Offense Charged Against Ms. Weiden

The question whether the "vendor and pricing information for international suppliers" that Ms. Weiden allegedly possessed constitutes a trade secret was conclusively determined in the ITC action.  It follows that the issue cannot be relitigated in the context of this criminal case – and hence that the government cannot prove the elements of the lone offense charged against Ms. Weiden in the indictment.

All four of the factors required to apply collateral estoppel are present here.  *See Kendall*, 518 F.3d at 1050.  First, there was a full and fair opportunity to litigate the trade secret issue in the ITC case.  Second, the question whether the vendor information Ms. Weiden possessed constitutes a trade secret issue was actually litigated before the ITC.  Third, the question was fully adjudicated and a final judgment was entered by the full Commission. Fourth, the party against whom collateral estoppel is asserted in the present action, the United States, was a party or in privity with a party before the ITC.

### 1.   <u>The Trade Secret Issue Was Fully and Fairly Litigated Before the ITC</u>

First, the question whether the vendor information Ms. Weiden possessed was a trade secret was fully and fairly litigated before the ITC.  The formality of the ITC process and the extensive litigation engaged in by both sides—more than a dozen depositions, a six-day trial, hundreds of admitted exhibits, and more than 1,000 pages of pre- and post-trial briefing—leaves no doubt that the ITC proceeding was sufficiently robust to trigger issue preclusion.  As the ITC explains in its own publication, "Section 1337 investigations are conducted in accordance with procedural rules that are similar in many respects to the Federal Rules of Civil Procedure. . . . Hence, parties have the right of adequate notice, cross-examination, presentation of evidence, objection, motion, argument, and other rights essential to a fair hearing."  ITC Official Publication No. 4105, *supra*, at 2; *cf. B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1309 (2015) (noting that preclusion may not apply when "the procedures used in the first proceeding were fundamentally poor, cursory, or unfair").  The thick record of the ITC

proceeding makes clear that the parties not only had the opportunity to litigate the issue, but that they took full advantage of it.

### 2. The Issue of Whether the "Vendor Information" Constitutes a Trade Secret Was Actually Litigated in the ITC Case

Second, the ITC's decision that the "Vendor Information" Ms. Weiden possessed did not meet the legal definition of a trade secret was actually litigated in the ITC case. *See In re Huang*, 275 F.3d 1173, 1177-78 (9th Cir. 2002) (issues must be litigated or determined for issue preclusion to apply). Trade Secret No. 128 in the ITC action consisted of the same "Vendor Information" that is at issue in the present criminal case. There, as here, that information was contained in a handful of emails Ms. Weiden received while working at Jawbone and later forwarded to herself while working at Fitbit. And there, as here, the information consisted of "[l]ists and schedules of Jawbone's vendors who have been determined to be . . . capable of providing reliable services and products, including but not limited to printed circuit board fabrication, labor, materials, components, and other services involving specialized skills or equipment, and corresponding pricing information." Dkt. 1, ¶ 10(c); *accord* Jawbone's Third Amended Designations of Trade Secrets, at 110-111 (describing alleged trade secret as "[l]ists, schedules and charts identifying Jawbone's suppliers and vendors" that facilitated "favorable pricing and terms with its vendors").

Moreover, in reaching her determination that the information Ms. Weiden possessed was not a trade secret, the ALJ applied the same legal definition of a trade secret that governs the present case. *See* ITC Decision, at 18 ("In the chapter of Title 18 of the U.S. Code proscribing the '[t]heft of trade secrets,' Congress defined 'trade secret' as information that the owner 'has taken reasonable measures to keep' secret and which 'derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means.'" (citing 18 U.S.C. §§ 1832, 1839(3))). The ALJ held that the information Ms. Weiden possessed did not meet this definition because, *inter alia*, the information was "generally available" or "readily acquired." *Id.* at 40. This holding was essential to the ALJ's ruling that the claims of trade-secret misappropriation lacked merit. *Id.* at

39-40 ("With respect to vendors, the complaining party must show that the information is not 'publicly available' or 'readily available in the industry.' . . . Jawbone has not satisfied any of these requirements.").

In short, the ALJ applied the same law to the same facts to make a finding on the same issue presented in the criminal case.

### 3.  The Trade Secret Issue Was Resolved By Way of a Final ITC Judgment

To have preclusive effect, an administrative decision must be final.  *International Brotherhood of Elec. Workers v. Brink Constr. Co.*, 825 F.2d 207, 213 (9th Cir. 1987); *cf. Ornellas v. Oakley*, 618 F.2d 1351, 1356 (9th Cir. 1980) (noting that a "reversed or dismissed judgment cannot serve as the basis for a disposition on the ground of res judicata or collateral estoppel").  In her August 23, 2016 decision, the ALJ definitively ruled that the "vendor information" possessed by Ms. Weiden was not a trade secret as defined by federal law.  ITC Decision, at 42 (rejecting Jawbone's trade secret allegations regarding vendor information "as a matter of law").  This determination became final for purposes of issue preclusion on October 20, 2016, when the full ITC Commission denied Jawbone's petition for review, affirmed the ALJ's decision, and terminated the case.  Exhibit 2, at 1; *see Aunyx Corp.,* 978 F.2d at 7 (ITC decision rendered final for res judicata purposes when time for appeal ends).

### 4.  The Government Was a Party, Or In Privity with a Party, to the ITC Case

Issue preclusion applies where the parties to a second action are functionally the same or are in privity with the parties to the first action.  *Kendall*, 518 F.3d at 1050.  Here, the Department of Justice is estopped from relitigating the trade-secret issue because the United States was both an actual party and the real party in interest in the ITC action.  *See United States v. Abatti*, 463 F. Supp. 596, 603 (S.D. Cal. 1978) (applying collateral estoppel to bar criminal prosecution where "[t]he government was, for all intents and purposes, the plaintiff in the first [tax court] proceeding, and as such, it could control the circumstances of litigation.").

At all times, the United States, through the U.S. Office of Unfair Import Investigations, was a named party in the ITC case.  *See* 19 C.F.R. § 210.3 ("Party means each complainant,

1  respondent, intervenor, or the Office of Unfair Import Investigations.").  ITC regulations

2  authorized the United States to play an active role in the proceedings by taking up to ten

3  depositions and participating in all depositions taken by other parties, filing its own motions and

4  responding to the motions of other parties, making opening statements and cross-examining

5  witnesses at trial, and seeking its own appeal if it was dissatisfied with the result reached by the

6  ALJ.  19 C.F.R. §§ 210.49; 210.28; 210.15; *see also* Soucie, *supra*, § 3:6 ("In most

7  investigations, the staff attorney will participate in conferences of the parties, discovery and

8  motions practice, the hearing, and will submit post-hearing briefs.").  In fact, the United States,

9  through the OUII, participated in depositions in the ITC matter,[5] presented its own case in chief

10  at the trial, and submitted pre- and post-hearing briefs that addressed, *inter alia*, the question of

11  whether the "Vendor Information" Ms. Weiden possessed met the legal definition of a trade

12  secret.

13        Beyond its formal status as a party to the litigation, the United States is bound by the

14  ITC's ruling because it was "the real party in interest" in the ITC case.  *See Jaffe*, 433 B.R. at

15  544 (finding that the United States is "the real party in interest" in ITC proceedings).  Having

16  elected to commence an investigation into the allegations asserted in Jawbone's ITC complaint,

17  the government became more than a passive observer of the ITC proceedings.  *See id.* (noting

18  that when "a private party files a complaint upon which a government agency chooses

19  independently to commence an investigation, the government agency's investigation is an action

20  brought by a governmental unit").  Rather, the United States acquired a stake in the outcome of

21  the action in its role as an enforcer of trade-secret protections.

22        Notably, the position the United States ultimately took before the ITC was inconsistent

23  with the position the government is taking in this case.  While the OUII attorneys started off the

24  investigative process by consulting with Jawbone, by the end of the proceeding, they reversed

25  their position and argued forcefully *against* Jawbone's contention that the information Ms.

26

27  [5] In the ITC case, the ALJ's published rules required the OUII investigative attorney to

28  participate in biweekly meetings of a "discovery conference committee" to resolve discovery disputes. *See* Ground Rules of Judge Dee Lord, Rule 4.1.1 (Discovery Committee).

Weiden possessed was a trade secret.  As the OUII wrote in its Posthearing Brief, a finding that Ms. Weiden's "Vendor Information" constitutes a trade secret would effectively mean that "whether or not Jawbone has ever used UPS or Federal Express to ship a package containing Jawbone products is part of its manufacturer, supplier, and vendor trade secret."  Commission Investigative Staff's Posthearing Brief, at 28.  Accordingly, the OUII urged the ALJ to reject the argument that Ms. Weiden possessed a trade secret.

Finally, the United States' active participation in the ITC proceeding was sufficient to trigger collateral estoppel even if the government had not been a formal or real party in interest. It is well settled that collateral estoppel applies against a non-party who assumes control over litigation that directly affects its interests.  *See Montana v. United States*, 440 U.S. 147, 153 (1979) ("One who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own . . . is as much bound . . . as he would be if he had been a party to the record.") (citation and internal quotes omitted); *Adams v. Morton*, 581 F.2d 1314, 1318 (9th Cir. 1978) (applying preclusion to a "non-party who . . . has an interest sufficiently close to the matter in litigation, and had an adequate opportunity to litigate in support of or in defense against the cause of action on which the suit is based") (citing 1B Moore's Federal Practice, P 0.411(6), at 1552 (2d ed. 1974)).  As detailed above, the ITC not only reviewed Jawbone's complaint and elected to initiate an investigation, but, through the OUII, also joined in the pretrial litigation, argued at trial, and submitted post-trial briefing to the ALJ.  The United States thus "plainly had a sufficient 'laboring oar' in the conduct of the [ITC] proceeding to actuate principles of estoppel."  *Montana*, 440 U.S. at 974; *cf. EEOC v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1287-88 (11th Cir. 2004) (finding no preclusion against EEOC where EEOC's role in earlier proceeding was advisory only, EEOC "was [not] heard at all during the trial," and EEOC "had no power to decide which claims the plaintiffs could assert" or how the case should be argued or appealed).  For this reason, too, the ITC's ruling controls here.

1    In sum, the ITC's determination that Ms. Weiden did not possess a trade secret precludes

2    a contrary finding in this Court.  As a result, the government cannot possibly prove that the

3    "Vendor Information" described in the indictment was a trade secret.  The necessary failure of

4    this element of the charged offense dooms this prosecution.  *See Abatti*, 463 F. Supp. at 601

5    (dismissing criminal charge where "the Tax Court has already decided adversely to the

6    government an element of the government's case").  The lone count of the indictment charged

7    against Ms. Weiden must accordingly be dismissed.

8                                           **CONCLUSION**

9    For the reasons stated, the Court should find that the government is collaterally estopped

10   from proving that Ms. Weiden possessed a trade secret.  Accordingly, the Court should grant

11   Ms. Weiden's motion and dismiss the lone charge against her.

12

13   Dated:  November 2, 2018                      Respectfully submitted,

14                                                 CLARENCE DYER & COHEN LLP

15

16                                                 By ____/s/_____

17                                                    Josh A. Cohen
                                                      Jonathan M. Baum
18                                                    Attorneys for JING QI "GEE" WEIDEN

19

20

21

22

23

24

25

26

27

28